### In re ARTHUR TREACHER'S FRANCHISEE LITIGATION.

#### MDL No. 467.

United States District Court,
E. D. Pennsylvania.

Oct. 15, 1981.

As Amended Oct. 16 and Oct. 20, 1981.

John M. Elliott and Edward F. Mannino, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for Arthur Treacher's Fish & Chips, Inc. and Mrs. Paul's.

Franklin Poul, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for Franchisees.

MEMORANDUM AND ORDER

HANNUM, District Judge.

### I. *Preliminary Statement*

This Memorandum and the Order which follows it will dispose of the following pending motions:

(1) Motion to Amend Plaintiff's Complaint, Civil Action No. 80–3625, Docket Entry No. 9

(2) Defendant Horstmyer's Motion to Strike Plaintiff's Amendment to the Complaint, Civil Action No. 80–3625, Docket Entry No. 11

(3) Defendant Horstmyer's Motion to Dismiss for Insufficiency of Service of Process or in the Alternative for a More Definite Statement, Civil Action No. 81–1085, Docket Entry No. 5

(4) Motion of Defendants Arthur Treacher's of New England, Inc. and Emanual J. Elliott to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Civil Action No. 81–1085, Docket Entry No. 28

(5) Motion of Defendants Yegen Foods, Inc. and Robert Dennis to Dismiss the Complaint for Lack of Personal Jurisdiction and Improper Venue, Civil Action No. 81–1085, MDL Docket Entry No. 147

(6) Plaintiff Arthur Treacher's Fish & Chips, Inc. Motion for Entry of a Default Judgment on its Complaint Against William Condren on the Issue of Liability, Civil Action No. 81–1085, Docket Entry No. 35

(7) Defendant William J. Condren's Motion in Opposition to Plaintiff's Motion for Judgment by Default and in Support of Condren's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, Civil Action No. 81–1085, MDL Docket Entry No. 29

(8) Arthur Treacher's Motion for Entry of a Default Judgment on the Amended Counterclaim Against Plaintiff Worcester Quality Foods, Inc./Worcester Quality Foods, Inc.'s Motion to Set Aside Entry of Default, Civil Action No. 81–3173, MDL Docket Entry Nos. 192 & 199

(9) Defendant Treacher's of Middlesex, Inc., TRI–MID, Inc. and Louis J. Miazga's Motion to Dismiss, Civil Action No. 81–1085, Docket Entry No. 19

(10) Motion of Plaintiff Arthur Treacher's Fish & Chips, Inc. for Certification of a Defendant Class Action, Civil Action No. 81–1085, Docket Entry No. 49

The above listed motions involve, for the most part, jurisdictional questions with the exception of the class action motion and several miscellaneous motions.

This litigation is still in the relatively early stages. The First Preliminary Pretrial Conference occurred on July 17, 1981. At that conference, the Court set a discovery cut-off date of August 14, 1981 on jurisdictional, venue and class action issues. However, on August 10, 1981, upon receipt of a joint motion from liaison counsel, the deadline for this preliminary or "first wave" discovery was extended to September 18, 1981. *See* MDL Docket Entry No. 113. With the expiration of that deadline, the Court considered the above listed motions ripe for resolution. What now follows, therefore, is a discussion and, in most cases, a resolution of these motions. Several of these motions, however, involve issues, such as the question of proper venue and class action treatment, which the Court has deferred ruling upon for the reasons stated *infra*.

Rather than engaging in an opening and lengthy factual recitation generally applicable to all the matters raised in these motions, the Court will discuss any facts relevant to a particular motion within the section dealing with that motion. Additional factual background to this litigation as a whole can be found in the Court's Findings of Fact filed on August 3, 1981 in *Arthur Treacher's Fish & Chips, Inc. v. A & B Management Corporation ("A&B")*, 519 F.Supp. 739 (D.C.1981). *See also Interim Memorandum* and responses of counsel thereto, filed on August 21 and September 2, 1981, respectively. MDL Docket Entry Nos. 135, 160, 161 and 163.

Finally, at the conclusion of this Memorandum, the Court will offer its views as to the scope of topics to be addressed at the Second Pretrial Conference, presently

scheduled for October 20, 1981 at 2:00 P.M. in my courtroom. *See* Part XI, *infra.*

## II. *Defendant Horstmyer's Motion to Dismiss For Insufficiency of Service of Process or in the Alternative for a More Definite Statement*

### A. *Background*

Horstmyer was handed a summons and a copy of the complaint in this matter while he was here in Pennsylvania to testify in the preliminary injunction hearing conducted in the A&B case. Defendant's motion avers that, at all times subsequent to the filing of the complaint in this particular action (81–1085), Horstmyer has neither resided in nor conducted business in Pennsylvania. His sole purpose for being in this forum (when he was hand-served with process) was to testify in the A&B action. Therefore, under the circumstances, defendant claims immunity from service of process, *see Stewart v. Ramsay*, 242 U.S. 128, 37 S.Ct. 44, 61 L.Ed. 192 (1916), and moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(5).

Alternatively, defendant contends that the complaint is "so vague and ambiguous that Mr. Horstmyer cannot reasonably be required to frame a responsive pleading." *Memorandum in Support of Defendant Horstmyer's Motion to Dismiss for Insufficient Service of Process or in the Alternative for a More Definite Statement*, Docket Entry No. 5 at 3 (hereinafter referred to as "Defendant's Memorandum"). Thus, defendant seeks the alternative relief of a more definite statement from plaintiff as to the cause of action alleged against him. Fed.R.Civ.P. 12(e).

### B. *Motion to Dismiss for Insufficiency of Service of Process*

Defendant's position on this score is succinctly stated. Mr. Horstmyer was present in this jurisdiction solely to give testimony and "[i]t is well established in the federal courts that an individual is immune from process when he is present in a jurisdiction solely to give testimony in [a] separate action." *Defendant's Memorandum* at 2. Therefore, defendant concludes that "service of process on Mr. Horstmyer during a break in his testimony before this Court was both improper and insufficient." *Id.* at 3.

Plaintiff concedes the factual setting in which Mr. Horstmyer was served but argues that "he was not immune from such service because service could have been made upon him by certified mail pursuant to Pennsylvania's long-arm statute and pursuant to Fed.R.Civ.P. 4(d)(7)" and, additionally, "because the case in which he appeared to testify is closely related to the instant action." *Plaintiff's Memorandum Contra Defendant Horstmyer's Motion to Dismiss for Insufficiency of Service of Process or in the Alternative for a More Definite Statement*, Docket Entry No. 11 at 4–5 (hereinafter referred to as "*Plaintiff's Memorandum*").

The rationale underlying this particular rule of immunity is to ensure the efficient administration of justice by encouraging the voluntary attendance of witnesses who might otherwise be dissuaded from appearing in a jurisdiction for fear of being served with process in an unrelated action. Hence, the privilege was designed for the benefit of the court rather than the individual. As the Court in *Stewart, supra*, stated:

> The privilege which is asserted here is the privilege of the court, rather than of the defendant. It is founded in the necessities of the judicial administration, which would be often embarrassed, and sometimes interrupted, if the suitor might be vexed with process while attending upon the court for the protection of his rights, or the witness while attending to testify. Witnesses would be chary of coming within our jurisdiction, and would be exposed to dangerous influences, if they might be punished with a law suit for displeasing parties by their testimony; and even parties in interest, whether on the record or not, might be deterred from the rightfully fearless assertion of a claim or the rightfully fearless assertion of a defense, if they were liable to be visited on the instant with writs from the defeated party.

242 U.S. at 130–131, 37 S.Ct. at 45–46 *quoting Parker v. Hotchkiss*, 1 Wall.Jr. 269, Fed.Cas. No. 10,739 (1849). Because the privilege is a creation of the court for the benefit of the court, "[i]t follows that the privilege should not be enlarged beyond the reason upon which it is founded, and that it should be extended or withheld only as judicial necessities require." *Lamb v. Schmitt*, 285 U.S. 222, 225, 52 S.Ct. 317, 318, 76 L.Ed. 720 (1932).

Enlarging the doctrine "beyond the reason upon which it is founded" would result if this Court denied the effect of the personal service upon Horstmyer notwithstanding the fact that he could have been validly served in his home state pursuant to Pennsylvania's long-arm statute, 42 Pa. Cons.Stat.Ann. § 5323(a)(3). The Court agrees with the logic of the viewpoint expressed in 4 Wright & Miller, Federal Practice and Procedure: Civil § 1076 at 321 (West 1969):

> If a person has committed an act or caused consequences within a state that are sufficient to subject him to local jurisdiction and the state has enacted a long-arm statute by which he can be served personally outside the state, or by registered mail, or by some other means, little

purpose is served by giving him immunity from process while he is participating in some other litigation in the state regardless of the nature of his capacity or relationship to the pending action. This is logical because it makes little sense to grant immunity to a person who can be served in his home jurisdiction under the forum's long-arm statute.

(footnote omitted). *See, e. g., United States v. Green*, 305 F.Supp. 125 (S.D.N.Y. 1969); *Gardner v. United States*, 246 F.Supp. 1014 (S.D.N.Y.1965).

Defendant's argument relates solely to the sufficiency of service of process and it is not premised on any asserted lack of personal jurisdiction over Horstmyer. Indeed, since Horstmyer was president of Arthur Treacher's here in Philadelphia from March until July, 1980, defendant would probably have a difficult time in sustaining a claim of lack of in personam jurisdiction. *See* Complaint, ¶¶ 16, 75(b) and (c); *Plaintiff's Memorandum* at 4 n.1. Therefore, on the assumption that Horstmyer could have been served pursuant to Pennsylvania's long-arm statute,[1] it would be senseless to grant this motion due to the fact that he was personally served while here to testify in the A&B action.[2] Defendant's motion to dismiss for

1. The court is mindful that its conclusion is premised on the assumption stated in the text. However, from the Court's knowledge of the facts of this litigation and the pleadings to date, it seems apparent that in personam jurisdiction over Horstmyer would be sustained in the face of a direct challenge. Therefore, rather than embark at this juncture on an extensive and potentially futile analysis of the applicable due process standards in conjunction with the long-arm statute as they may pertain to the question of in personam jurisdiction over Horstmyer, the Court will rest its denial of the instant motion on what it considers to be a safe assumption. Of course, if defendant has any doubts as to the validity of the Court's assumption he may present them by way of a rule 12(b)(2) motion. *Cf. Pavlo v. James*, 437 F.Supp. 125 (S.D.N.Y. 1977). In *Pavlo*, the court, construing New York law and relying upon *Gardner v. United States, supra*, stated that the reason for the immunity disappears if the defendant is otherwise subject to the reach of the applicable long-arm statute. 437 F.Supp. at 127. However, the defendant in *Pavlo* moved to dismiss for lack of personal jurisdiction, thus the court necessarily discussed and decided the "ultimate

question" of whether the defendant came within the scope of New York's long-arm statute. *Id.*

2. The Court is not generally disavowing the immunity doctrine set forth in *Stewart v. Ramsay, supra*, only its applicability to the circumstances presented in the present motion. *See* 4 Wright & Miller, *supra*, § 1076. Arguably, the personal service effected here provided defendant with *better* notice of this action than would have a piece of certified mail awaiting defendant upon his return to his home state. *See generally id.*, § 1074.

Although the Court concludes that the immunity doctrine should not be extended to Horstmyer's situation, in so holding the Court is not condoning the provocative manner in which he was served, *i. e.*, handing him process during a break in his testimony in the A&B case. It is unfortunate that counsel for plaintiff did not ask counsel for Horstmyer if he would accept service inasmuch as Horstmyer was present to testify or if refused, to enlist the Court's view since Horstmyer could have been served pursuant to Pennsylvania's long-arm statute to avoid

insufficient service of process will therefore be denied.

C. *Motion for a More Definite Statement*

Defendant seeks the alternative relief of a more definite statement from plaintiff, Fed.R.Civ.P. 12(e), contending that first, "it is impossible to tell from the substantive portion of Count I what acts defendant Horstmyer allegedly committed, conspired in, aided, or abetted," and second, that "it is impossible to tell whether or not the plaintiff intended to include Mr. Horstmyer as a defendant under Count II." *Defendant's Memorandum* at 3 and 4. (footnote omitted).

■ The Court will address defendant's latter contention first. In Count II plaintiff seeks to assert claims against a defendant class. *See* Part VIII, *infra*. The count, beginning with paragraph 86, is clearly designated as a "Class Action." Paragraphs 88 and 89 identify the purported class members. The remaining paragraphs of Count II sound in breach of contract and are directed against the class of Arthur Treacher's franchisees who have allegedly "failed and refused to make the royalty payments to Arthur Treacher's which the franchisees are required to make under these written contracts." *Complaint*, ¶ 95. Paragraphs 96 through 115 list the franchisees and the respective amounts of allegedly due royalties. The prayer for relief in Count II is directed toward a recoupment of past due royalties. Thus, it seems clear that Horstmyer is not included as a class action defendant in Count II. *See Plaintiff's Memorandum* at 8–9. Defendant's contention, that because the first paragraph of Count II repeats and realleges every allegation of Count I, *see Complaint*, ¶ 86, it is therefore unclear whether Horstmyer is intended as a defendant under Count II, is without merit. *See Defendant's Memorandum* at 4. Defendant's position as to the purported ambiguity in Count II caused by the language of paragraph 86 falls far short of warranting a more definite statement.

■ The Court is likewise unpersuaded by defendant's difficulty in interpreting Count I of the complaint. Plaintiff's allegations pertaining to Horstmyer's role in the alleged conspiracy are sufficient to put him on notice of the claim alleged against him. *See Complaint*, ¶¶ 75(b)–75(c). Any confusion on the part of defendant may be removed through discovery. In the meantime, the complaint gives defendant "fair notice" of the nature of plaintiff's claim and this is all that is required in light of the applicable pleading and discovery rules, which are liberal in nature. *See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957) (ruling upon motion to dismiss for failure to state a claim); *United Insurance Company of America v. B. W. Rudy, Inc.*, 42 F.R.D. 398, 402–03 (E.D.Pa.1967) (ruling upon alternative motion to dismiss or motion for more particular statement). A rule 12(e) motion "is proper only when the pleading to which it is addressed is so vague that it cannot be responded to, . . ." 5 Wright & Miller, *supra*, § 1377 at 748. Measured by this standard, plaintiff's complaint is sufficiently clear, *see* note 23 *supra*, and defendant's motion will therefore be denied.[3]

---

inconvenience and to accommodate the Court. This oversight to courtesy is not condoned.

**3.** In Civil Action No. 80–3625, *Arthur Treacher's Fish & Chips, Inc. v. Arthur Treacher's Franchisee Association, et al*, two motions pertaining to defendant Horstmyer are pending. On January 12, 1981, plaintiff filed an amended complaint adding Horstmyer as a defendant. This pleading was filed out of time and without leave of court or written consent of Horstmyer. *See* Fed.R.Civ.P. 15(a). Plaintiff sought to cure this defect by seeking leave of the court to add Horstmyer with a Motion to Amend filed on January 21, 1981. On February 2, 1981, de-

fendant filed a motion to strike the amendment of January 12, and a brief in opposition to the motion to amend of January 21. Thus, these papers involve essentially one issue—whether plaintiff should be permitted to amend its complaint in 80–3625 to add Horstmyer.

A resolution of this issue may be unnecessary since Horstmyer was originally named in Civil Action No. 81–1085 and the allegations against him in that action are virtually identical to those allegations against him contained in the amended complaint in Civil Action No. 80–3625. Therefore, because Horstmyer is present as a defendant in 81–1085, plaintiff may consider it unnecessary to pursue its motion to

### III. Motion of Defendants Arthur Treacher's of New England, Inc. and Emanuel J. Elliott to Dismiss for Lack of Personal Jurisdiction and Improper Venue

#### A. Background

Defendant, Arthur Treacher's of New England, Inc. ("ATNE"), is named in the complaint as a franchisee of Arthur Treacher's Fish & Chips, Inc. ("ATFC"). Elliott is the owner and president of ATNE. The relationship between these parties began when they entered into an "Area License Agreement" on January 27, 1972. The agreement granted an exclusive license to defendant to operate Arthur Treacher's restaurants in the New England area with the exceptions of Worcester County, Massachusetts and Hartford, New Haven, Middlesex and New London counties, Connecticut. The parties entered into an amended agreement on July 1, 1976 which still restricted defendant's scope of operation to the New England area. Both agreements were signed by Elliott as president of ATNE.

ATFC is a Delaware corporation with its headquarters located in Philadelphia. However, at the time the agreements were entered into with ATNE, plaintiff's principal place of business was located in Columbus, Ohio, and the agreements with defendant were executed there and provide that they are to be governed by Ohio law. Plaintiff's relocation of its corporate headquarters to Philadelphia occurred in late 1979, when it was purchased by Mrs. Paul's Kitchens, Inc.

Defendant, ATNE, is also a Delaware corporation. Its corporate headquarters are located in Orlando, Florida and its "principal operating offices" are located in Kingston, Rhode Island. *Declaration of Emanuel J. Elliott*, Docket Entry No. 29, ¶ 3 ("*Declaration*"). As already noted, the area license agreement granted to defendant covers the New England area and the corporation does not operate any restaurants elsewhere. *Id.*, ¶ 7. The defendant corporation conducts no business in Pennsylvania and it is not licensed to do so. It has no offices, bank accounts, assets, mailing address, telephone listing, real or personal property, or records within Pennsylvania. *Id.*, ¶¶ 3, 8, 11.

Elliott is a Florida resident. He has no office, bank accounts, assets, agents, mailing address, telephone listing, real or personal property, or records in Pennsylvania and he has neither entered into written or oral agreements in Pennsylvania nor conducted any business in Pennsylvania. *Id.*, ¶¶ 4-5.

Neither Elliott nor ATNE are, or ever have been, members of the Arthur Treacher's Franchisee Association ("ATFA"), *see* Complaint, ¶ 2, or any other association of Arthur Treacher's franchisees. *Declaration*, ¶ 9. No representative of ATNE ever attended any meetings of the franchisee association in Philadelphia.[4] No representative of ATNE ever visited Pennsylvania for any business purpose.

#### B. The Motion

Defendants have moved for a dismissal based upon a lack of personal jurisdiction or, in the alternative, improper venue. Fed. R.Civ.P. 12(b)(2) and 12(b)(3). In light of the factual setting with regard to these

---

amend in 80-3625. Consistent with this observation, the Court will defer ruling on the motion to amend in 80-3625 and await counsel's views as to whether it may be considered as moot. In the meantime, however, for the sake of clarity of the record, defendant's motion to strike will be granted since the amendment filed on January 12, 1981 was clearly out of time. This ruling will not prejudice any consideration of plaintiff's motion to amend, should such consideration become necessary.

4. Elliott did attend one meeting of the franchisee association which was held in Chicago on March 13, 1980. However, Elliott's attendance at this meeting was as a representative of Gulf States Fast Foods, Inc., a distinct corporation from ATNE. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Docket Entry No. 42, Exhibits "A" & "B" (hereinafter referred to as "*Plaintiff's Memorandum*"); Supplemental Declaration of Emanuel J. Elliott in Support of Motion to Dismiss, Docket Entry No. 58, ¶¶ 1-2 (*Supplemental Declaration*").

Although neither Elliott nor ATNE was ever a member of the ATFA, Elliott did contribute $300 to the association on behalf of Gulf States. *Plaintiff's Memorandum*, Exhibit "B."

defendants, Part III.A. *supra*, their obvious contention on the jurisdictional aspect of the motion is the lack of minimum contacts with Pennsylvania which would otherwise warrant the assertion of in personam jurisdiction over them.

Plaintiff responds to defendant's motion by first pointing out that, although the Declaration filed by Elliott states that he is not a member of the ATFA, he has attended "at least one meeting" of the franchisee association. He also contributed money to the association. *Plaintiff's Memorandum* at 3; *see* note 4 *supra*. Plaintiff also points out that Elliott's Declaration admits that ATNE is a franchisee of plaintiff; is controlled by Elliott; has entered into contracts with the plaintiff; and that plaintiff has been located in Philadelphia since 1979. Plaintiff contends that these admissions by themselves are enough to satisfy the minimal requirements of due process and venue. *Plaintiff's Memorandum* at 7.

Notwithstanding the argument that these contacts, *e. g.*, a contractual relationship with the plaintiff who is located in Philadelphia, satisfy the due process standard for the exercise of personal jurisdiction, the crux of plaintiff's opposition to this motion is the alleged participation of these two defendants in a conspiracy to, *inter alia*, withhold royalties and destroy the plaintiff. Plaintiff contends that the alleged conspiracy "was conceived and executed through a series of meetings held in Philadelphia, and was designed to destroy plaintiff, a Philadelphia business." *Id.* at 8. Essentially, plaintiff offers little to counter the Declaration filed by Elliott,[5] rather, the plaintiff is

arguing that jurisdiction should be exercised over defendants as co-conspirators of those who allegedly met in Philadelphia for the purpose of engaging in and executing the conspiracy. *Plaintiff's Memorandum* at 10–19.

### C. Applicable Law

■ Analysis begins with an examination of Pennsylvania's long-arm statute which provides for the exercise of in personam jurisdiction over non-residents "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat. Ann. § 5322(b).[6] Thus, the question presented is whether personal jurisdiction may be exercised over these defendants consistent with the constitutional standard of "minimum contacts."

At the outset, application of the "minimum contacts" test naturally raises the question of what amount or quality of minimum contacts will suffice. The Supreme Court has instructed us that "certain minimum contacts" must exist between the non-resident defendant and the forum "such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting, Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940).[7] Following the decision in *International Shoe*, the Court continued to espouse an expansive

---

**5.** Defendant Elliott filed his Declaration and Supplemental Declaration (in support of the motion to dismiss) pursuant to 28 U.S.C. § 1746. In addition to the facts sworn to in the original declaration, *see* Part III.A. *supra*, the *Supplemental Declaration* at ¶ 3 specifically denies the allegation that Elliott or ATNE ever entered into any agreement to withhold royalties.

**6.** Assuming the constitutional due process standard is met, plaintiff may utilize Pennsylvania's long arm statute to obtain jurisdiction over these defendants. Fed.R.Civ.P. 4(e). The constitutional standards to be applied when examining questions of personal jurisdiction

are the same for the state and federal courts. *Donner v. Tams-Witmark Music Library, Inc.*, 480 F.Supp. 1229, 1231–1232 (E.D.Pa.1979) ("The in personam jurisdiction of this court is coextensive with that of the Pennsylvania courts").

**7.** Although *International Shoe* was a diversity case and the Supreme Court was thus stating principles of state court in personam jurisdiction, these principles are equally applicable to federal courts hearing federal question cases. *Superior Coal Co. v. Ruhrkohle, A.G.*, 83 F.R.D. 414, 418 n.5 (E.D.Pa.1979). *See* note 6, *supra*.

concept[8] of personal jurisdiction over non-residents with its decisions in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952) and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In *Perkins*, the Court held that jurisdiction over the defendant company could constitutionally be exercised despite the fact that the activities giving rise to the cause of action occurred outside the forum, if the company had sufficient contacts with the forum even though these contacts were unrelated to the cause of action. *Perkins*, 342 U.S. at 446–448, 72 S.Ct. at 418–419.[9] *McGee, supra*, went a bit further and found that essentially one contact with the forum, the presence of an insured with a contract issued by the defendant, was sufficient to exercise jurisdiction over the non-resident insurance company consistent with due process and the ruling in *International Shoe*. *McGee*, 355 U.S. at 223, 78 S.Ct. at 201.[10]

The liberal trend of the Supreme Court in enunciating standards of in personam jurisdiction, as evidenced by *International Shoe* and its progeny, decelerated with Chief Justice Warren's decision in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The Court in *Hanson* admonished that "it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of

state courts." *Id.* at 251, 78 S.Ct. at 1238. Although abiding by the "minimum contacts" rule set forth in *International Shoe*, the *Hanson* Court emphasized that "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 78 S.Ct. at 1239, *citing International Shoe, supra*, 326 U.S. at 319, 66 S.Ct. at 159.

The emphasis by the *Hanson* Court on purposeful activity by the defendant by which it takes advantage of the forum state's laws was recently reaffirmed by the Supreme Court in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295–299, 100 S.Ct. 559, 566–568, 62 L.Ed.2d 490 (1980). *See also Kulko v. Superior Court*, 436 U.S. 84, 94, 98 S.Ct. 1690, 1698, 56 L.Ed.2d 132 (1978).

■■ With the framework for analysis appropriately constructed, the Court will now apply the facts relevant to this particular motion. Preliminarily, the Court notes that plaintiff bears the burden of sustaining the existence of personal jurisdiction in the face of defendant's challenge. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). However, the allegations of the complaint must be accepted as true and, furthermore,

---

**8.** The concept is liberal in comparison to the test which had existed prior to *International Shoe* and its progeny, that is, that personal jurisdiction must be predicated upon the physical presence of the defendant within the territorial limits of the forum. *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1877).

**9.** The contacts with the forum state included the maintenance of an office and bank accounts there, disbursal of salary checks and the carrying on of company correspondence. 342 U.S. at 447–448, 72 S.Ct. at 419.

**10.** *Cf. Hess v. Pawloski*, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091 (1927). The decision in *McGee* was foreshadowed somewhat by the ruling in *Hess*. In *Hess*, a Massachusetts statute was upheld in the face of a fourteenth amendment due process challenge. The statute provided that the use by a non-resident of the forum state's highways was the equivalent to

an appointment by the non-resident of the registrar of the state to accept service of process in any action arising out of a motor vehicle accident in which the non-resident was involved. *Hess*, 274 U.S. at 354, 47 S.Ct. at 632. The Court stated that the "difference between the formal and implied appointment is not substantial so far as concerns the application of the due process clause of the Fourteenth Amendment." *Id.* at 357, 47 S.Ct. at 633. Thus, consent on the part of the non-resident was a factor in both *McGee* and *Hess*, although the consent was arguably fictional, especially in *Hess*. *Cf. Flexner v. Farson*, 248 U.S. 289, 39 S.Ct. 97, 63 L.Ed. 250 (1919).

*International Shoe*, and later *McGee*, were instrumental in prompting the states to enact comprehensive long arm statutes. *See* M. Rosenberg, J. Weinstein, H. Smit, H. Korn, Elements of Civil Procedure, 286 n.2 (3d ed. 1976).

plaintiff is entitled to every favorable inference which can be drawn from the pleadings, affidavits, and exhibits. *Melo-Sonics Corp. v. Cropp*, 342 F.2d 856, 858–859 (3d Cir. 1965); *Oxford First Corp. v. PNC Liquidating Corp.*, 372 F.Supp. 191, 192–93 and n.2 (E.D.Pa.1974).

 In attempting to sustain its burden, plaintiff presents two alternative theories, *see* Part III.B., *supra.* First, plaintiff argues that the business relationship of the parties, without more, is sufficient "to satisfy the minimal requirements of due process and venue." *Plaintiff's Memorandum* at 7. Defendant, ATNE, is an Arthur Treacher's franchisee controlled by Elliott, they did enter into contracts with the plaintiff, and the plaintiff has been located in Philadelphia since 1979. Despite these admitted connections among plaintiff, defendant, and this forum, the Court cannot accept plaintiff's contention that these factors can be equated to the minimum contracts needed to satisfy the due process standards set forth in the cases from *Pennoyer* to *Woodson, supra.* Plaintiff's move to Philadelphia was the result of the purchase by Mrs. Paul's Kitchens, Inc. and it occurred subsequent to the execution of the Ohio contracts by the parties. To require defendants to litigate in this forum because of the unilateral relocation of plaintiff, absent the lack of other contacts, would be unfair. "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson, supra*, 357 U.S. at 253, 78 S.Ct. at 1239. Hence, the Court cannot exercise jurisdiction over these defendants solely on the basis of the business relationship between the parties, a relationship entered into prior to plaintiff's unilateral move to this forum. In this context, the facts clearly demonstrate that there has been no act "by which the defendant[s] purposely avail[ed] [themselves] of the privilege of conducting activities within the forum state. . ." *Id.* [11]

Notwithstanding the Court's conclusion—that there are insufficient contacts between this forum and these defendants to warrant the exercise of in personam jurisdiction under the traditional analysis undertaken above—the analysis does not end here for plaintiff has set forth an alternative theory of personal jurisdiction arising out of the alleged conspiracy among the defendants. As plaintiff states in its brief opposing the motion to dismiss:

> Notwithstanding the averments of Elliott's Affidavit, it is clear from his attendance at a minimum of one meeting; his express advocacy of a concerted withholding of royalties and his monetary contributions to the ATFA that he fully supported ATFA's efforts to destroy Arthur Treacher's and joined the conspiracy to withhold fees. Significantly, Elliott's Affidavit does not deny that he authorized and/or ratified the actions of the ATFA or its Board, even if he remained a technical "non-member."

11. Although the allegations of the complaint must be accepted as true, *Melo-Sonics Corp., supra*, plaintiff cannot rest on these allegations in the face of specific contradictions contained in defendant's motion and supported by affidavits. *See e. g., Nu-Way Systems, Etc. v. Belmont Marketing, Inc.*, 635 F.2d 617, 619 n.2 (7th Cir. 1980); *Oddi v. Mariner-Denver, Inc.*, 461 F.Supp. 306, 310 (S.D.Ind.1978). Thus, although paragraph 56 of the complaint states that "[e]ach of the defendants is incorporated or licensed to do business or is doing business or is found in or is an inhabitant of Pennsylvania," the affidavits filed by Elliott specifically contradicts this allegation with regard to himself and ATNE and they stand uncontroverted by plaintiff.

The Court can see nothing in Fed.R.Civ.P. 12(b) which prevents it from relying upon Elliott's "Declarations." Docket Entry Nos. 29 and 58. In the context of a motion to dismiss for lack of personal jurisdiction, it is proper to look to affidavits, in addition to the pleadings, in order to ferret out jurisdictional facts. *Lynn v. Cohen*, 359 F.Supp. 565, 566 (S.D.N.Y.1973). *See generally DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280 (3d Cir. 1981). Indeed, in setting forth its contentions, plaintiff itself has relied upon defendants' supporting affidavit. *See Plaintiff's Memorandum* at 7. *Cf. Schwartz v. Commonwealth Land Title Insurance Co.*, 374 F.Supp. 564, 577–579 (E.D.Pa. 1974) (on *rule 12(b)(6)* motion matters outside the pleadings must be excluded by the court).

*Plaintiff's Memorandum* at 8.[12] Thus, the Court must decide whether an alleged conspiracy among all the named defendants, "conceived and executed through a series of meetings held in Philadelphia, "*Plaintiff's Memorandum* at 8,[13] warrants the exercise of personal jurisdiction over Elliott and ATNE as members of that conspiracy.

The basis for the conspiracy theory of personal jurisdiction seems to hinge upon the "time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy." *Gemini Enterprises, Inc. v. WFMY Television Corp.*, 470 F.Supp. 559, 564 (M.D.N.C.1979). Accordingly, *under some circumstances*, courts have asserted jurisdiction over a non-resident co-conspirator, over whom jurisdiction would otherwise be lacking, provided another co-conspirator has the traditional contacts with the forum and is subject to the Court's in personam jurisdiction. Problems which arise in the application of the theory result from a difficulty on the part of the courts in defining the parameters of those "circumstances." In other words, what facts must a plaintiff allege in order to withstand a challenge to the Court's in personam jurisdiction by a non-resident co-conspirator who has none of the traditional contacts with the forum state which would justify exercising personal jurisdiction over him absent the alleged conspiracy? Courts

which have considered this question have reached variant answers. *See, e. g., National Egg Co. v. Bank Leumi le-Israel B.M.*, 504 F.Supp. 305, 313 n.7 (N.D.Ga. 1980). Unfortunately, the parties have not cited, and the Court's research has not disclosed, much in the way of guidance from the Third Circuit.[14] Relevant and persuasive precedents elsewhere, however, do provide some guidance.

■■■ The Court will adhere to the conclusion that "[m]ere membership in a civil conspiracy does not *ipso facto* render a member subject to the jurisdiction of the forum of any other member." *Metropolitan Sanitary District of Greater Chicago v. General Electric Co.*, 208 F.Supp. 943, 946 (N.D.Ill.1962). In the cases which have considered this problem, "it appears that the mere presence of one conspirator is not sufficient to confer personal jurisdiction over another alleged conspirator." 4 Wright & Miller, *supra*, § 1069 at 48 (West Supp. 1981). For example, in *Glaros v. Perse*, 628 F.2d 679 (1st Cir. 1980), the court offered, as a definition of "something more than the mere presence of one conspirator," the performance of substantial acts within the forum in furtherance of the conspiracy "and of which the out-of-state co-conspirator was or should have been aware." *Id.* at 682.[15]

---

**12.** In response to the last sentence of the quoted paragraph, Elliott filed an affidavit specifically denying that he or ATNE ever authorized and/or ratified any action of the ATFA. Supplemental Declaration at ¶ 3. *See* note 5, *supra*.

**13.** In contrast to the assertion in plaintiff's brief, the complaint does not specifically allege that any conspiratorial activity occurred in Philadelphia. However, it does allege that scheduled meetings of the ATFA occurred in the Eastern District of Pennsylvania. Thus, giving the complaint a liberal interpretation, the allegation of meetings in this forum coupled with the general allegations of conspiracy, leads one to the inference in favor of the plaintiff that the allegedly conspiratorial activities took place at those meetings.

**14.** *But see* note 16, *infra*.

**15.** The *Glaros* court cited *Gemini, supra*, 470 F.Supp. at 564 wherein the court stated:

While the cases are not entirely clear in explaining the theory, a fair statement of it would be that while the mere presence of a conspirator within the forum state is not sufficient to permit personal jurisdiction over co-conspirators, certain additional connections between the conspiracy and the forum state will support exercise of jurisdiction over co-conspirators.... *These additional connections exist where substantial acts in furtherance of the conspiracy were performed in the forum state and the co-conspirator knew or should have known that acts would be performed in the forum state.*
(citations omitted and emphasis added).
This court is, of course, not bound by the First Circuit's recent decision in *Glaros*. However, absent contrary authority from the Third Circuit, the decision in *Glaros* is persuasive. *E. g., United States v. City of Philadelphia*, 482 F.Supp. 1248, 1256 n.7 (E.D.Pa.1979).

■ The allegations of conspiracy in this case are rather conclusory in nature. However, accepting these allegations and construing them liberally to conclude for the purposes of this motion that a conspiracy was entered into and executed in this forum, the allegations are nonetheless fatally deficient in terms of tying Elliott and ATNE into this conspiracy. *But compare* Parts VI and VII, *infra.* The alleged conspiracy is mainly keyed into the activities of the ATFA in Philadelphia. The facts related earlier demonstrate no connection between ATNE and the ATFA. The fact that Elliott attended one meeting of the association in Chicago, and contributed $300 to the association *on behalf of Gulf States, see* note 4 *supra,* is not enough for the Court to find that Elliott and ATNE were, or should have been aware, of the alleged activities of the ATFA in Philadelphia and therefore to exercise in personam jurisdiction on a conspiracy theory. The mere existence of a business interrelationship is not enough. *Cf. Merkel Associates, Inc. v. Bellofram Corp.,* 437 F.Supp. 612, 617–618 (W.D.N.Y. 1977) ("Merely showing the business interrelationship of the defendants without more is insufficient."). Defendants have done nothing to avail themselves of the privilege of conducting activities within this forum. *See Hanson, supra,* 357 U.S. at 253, 78 S.Ct. at 1239.[16]

The applicable law applied to the facts of this case dictate the conclusion that an exercise of in personam jurisdiction over these defendants would offend "traditional notions of fair play and substantial justice," *International Shoe, supra,* and the motion to dismiss filed by ATNE and Elliott will therefore be granted. *But see* note 17, *infra.*

IV. *Motion of Defendants Yegen Foods, Inc. and Robert Dennis to Dismiss the Complaint for Lack of Personal Jurisdiction and Improper Venue*

### A. Background

Defendant Dennis is an officer of defendant Yegen Foods, Inc. ("Yegen"), a former franchisee of the plaintiff. Yegen is a Washington corporation and it is not licensed to do business in Pennsylvania. The corporation does not own property in Pennsylvania. It does not maintain bank accounts, a business address, a phone listing or employees or agents in Pennsylvania. The corporation has never advertised, solicited any customers, or sold any goods in Pennsylvania. The corporation has never purchased any supplies from Pennsylvania. Yegen was not a member of the ATFA and made no contributions to the association. The only contact the defendants have had with the association occurred on October 16, 1979 when Dennis attended a meeting of franchisees in Baltimore, Maryland. Other than the attendance at this one meeting, Yegen has had no further contact with the ATFA. *See* Affidavit in Support of (and attached to) Motion to Dismiss, MDL Docket Entry No. 147.

### B. The Motion

■ In the Court's view, the factual scenario relevant to these defendants parallels that of defendants' ATNE and Elliott, Part III, *supra.* Similarly, the argument put forth by Arthur Treacher's with regard to Yegen is almost identical to the argument in opposition to ATNE's motion to dismiss. Accordingly, incorporating the reasoning contained in Part III.C., *supra,* the Court concludes that it does not have personal jurisdiction over defendants Dennis and Ye-

---

**16.** Plaintiff cites *Vespe Contracting Co. v. Anvan Corp.,* 433 F.Supp. 1226 (E.D.Pa.1977) for the proposition that "[b]y conducting a conspiracy within this forum to destroy and supplant plaintiff, a Philadelphia business, defendants purposefully availed themselves of the privilege of conducting activities within this forum and subjected themselves to this Court's jurisdiction." *Plaintiff's Memorandum* at 15. However, the Court in *Vespe Contracting* found contacts which were "numerous, contin-

uous and of a substantial quality" between the company seeking dismissal (Anvan Co.) and its partners with this Commonwealth. 433 F.Supp. at 1235. *See also id.* at 1233–1234 n.11.

Similar contacts between ATNE, Elliott and the other defendants with this Commonwealth are lacking here and a significant factual distinction therefore exists between *Vespe Contracting* and the present case.

gen Foods. However, plaintiff has raised two procedural matters in its opposition to this motion which the Court will now address.

### C. *Procedural Contentions*

First, plaintiff relies upon the language contained in Fed.R.Civ.P. 12(b) which states: "A motion making any of these defenses shall be made before pleading if a further pleading is permitted." Defendants filed an Answer and a Counterclaim on May 19, 1981, but the present motion was not filed until August 21, 1981. Thus, pursuant to the language quoted above from Rule 12(b), plaintiff contends that this motion is untimely and should not be considered.

The second procedural contention raised by plaintiff concerns the assertion of a Counterclaim by defendants in their Answer. By so doing, plaintiff argues that defendants thereby waived the defenses of lack of jurisdiction and improper venue.

 Neither of these procedural points persuade the Court that this motion should be denied, particularly in light of its otherwise substantive merit. The Court will not give Rule 12(b) the literal and restrictive interpretation advocated by the plaintiff to the effect that a motion to dismiss for lack of personal jurisdiction *must* precede the filing of a responsive pleading *despite* the fact that the very defense of lack of personal jurisdiction is contained in the responsive pleading as the first affirmative defense. Thus, the Court holds that defendant's filing of an answer which raises the defense of lack of personal jurisdiction prior to the filing of a Rule 12(b)(2) motion does not remove this motion from consideration by the Court on the ground that it is untimely. The Court finds persuasive the reasoning contained in *Majerus v. Walk*, 275 F.Supp. 952 (D.Minn.1967). *See also Equitable Life Assurance Society v. Saftlas*, 35 F.Supp. 62 (E.D.Pa.1940); *cf. Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980) (treating Rule 12(b)(6) motion filed after the answer as a motion for judgment on the pleadings pursuant to Rule 12(c)); *Local No. 1 (ACA), Etc. v. International Brotherhood of Team-*

*sters, Etc.*, 419 F.Supp. 263, 275 n.15 (E.D. Pa.1976) (same).

 A more difficult question is raised by the second procedural infirmity raised by plaintiff; because the defendants included a Counterclaim in their Answer, plaintiff would have the Court find that defendants waived the jurisdictional defense. In *Neifield v. Steinberg*, 438 F.2d 423 (3d Cir. 1971), the Third Circuit gave thorough consideration to a similar question and held

> that the assertion of a permissive counterclaim in the same pleading in which a defendant raises defenses of lack of jurisdiction over the person, lack of venue, insufficiency of process and inadequate service of process does not constitute a waiver of these defenses where the defendant later validly withdraws the counterclaim without leave of court.

*Id.* at 427. Of course, the question presented here is different in that defendants have not voluntarily withdrawn the counterclaim and, furthermore, plaintiff has filed an answer to it. *See* Docket Entry No. 40. But despite this distinction in the procedural posture of the present case, the reasoning in *Neifield* and the analysis contained therein of the policy underlying Rule 12(b), lead this Court to a similar result. In *Neifield*, Judge Biggs envisioned a situation similar to the one now faced by this Court when he stated:

> But even in the situation where the plaintiff has already filed a responsive pleading to the counterclaim, defendant's counterclaim can be treated as conditional, its assertion being hypothecated upon an adverse ruling on the defendant's jurisdictional defenses. Such treatment would certainly be consonant with a defendant's expectations. Furthermore, because the jurisdictional defenses can be heard and determined before trial on the application of any party (Rule 12(d)), the objection that the plaintiff will be unable to determine how to prepare his case is avoided, and neither party is forced to prepare for a trial that may never materialize.

*Id.* at 431 n.17 (emphasis added) (citations omitted). This language, albeit dictum, comports with the liberal policy underlying the Federal Rules and leads the Court to conclude that defendants pleading a Counterclaim in their Answer did not constitute a waiver of the jurisdictional defenses. *Cf. Goodall-Sanford, Inc. v. Landers Corp.*, 187 F.2d 639, 642 (Cust. & Pat.App.1951) (permissibility of pleading inconsistent defenses and counterclaims).

 The Court has given careful consideration to the additional arguments set forth in Plaintiff's Memorandum of Law in Further Opposition to Motion to Dismiss Filed by Defendants Robert Dennis and Yegen Foods, Inc. filed on October 7, 1981, MDL Docket Entry No. 204. In attempting to buttress its argument that defendants have waived their jurisdictional defense, plaintiff cites *Wyrough & Loser, Inc. v. Pelmor Laboratories, Inc.*, 376 F.2d 543 (3d Cir. 1967). However, in *Wyrough*, the Court based its finding of a waiver on the fact that defendant had participated in a preliminary injunction hearing which lasted four days and which resulted in an injunction order being entered against the defendant. It was only after the injunction hearing concluded and a decision was rendered that the defendant moved to dismiss for lack of personal jurisdiction. *Id.* at 544–545. Under these circumstances, the Court in *Wyrough* affirmed the district court's finding of a waiver based upon the act of the defendant in participating in the hearing. *Id.* at 547.

There has been no such affirmative action on the part of the defendants involved in the present motion. Rather, plaintiff would have this Court extend the rationale in *Wyrough* to hold that *inaction* on the part of these defendants (between the filing of the Answer and the filing of the motion to dismiss) constitutes a waiver in that defendants were waiting and hoping for a favorable decision in the A&B case in which plaintiff's motion for preliminary injunction was granted on July 30, 1981.

 Although this argument is somewhat appealing, the Court does not accept it for several reasons. First, plaintiff assumes that the ruling in the A&B case will be fully applicable to defendants Dennis and Yegen. However, the lack of evidence on the record pertaining directly to Dennis and Yegen leaves the Court in the position of being unable to assess the validity of this assumption. *See Interim Memorandum, supra*, at 4–5; *see also Stipulation, infra*, MDL Docket Entry No. 61. Second, based upon the aforementioned and as yet untested assumption plaintiff equates the inaction on the part of these defendants with "participation" in the A&B proceeding in that they were deferring a move to dismiss in the hope that A&B would prevail. While plaintiff's argument is logical, it is also conjecture. The court is unwilling to apply the decision in *Wyrough* on the basis of plaintiff's assumption followed by plaintiff's conjectural, albeit logical, conclusion. Having found merit to defendants' motion, and finding that there has been no waiver of the jurisdictional defense, their motion to dismiss for lack of personal jurisdiction will be granted.[17]

17. Rather than dismissing these defendants outright, the Court had considered transferring the case against them to the appropriate district where jurisdiction and venue would be proper. *See Shong Ching Lau v. Change*, 415 F.Supp. 627, 631–633 (E.D.Pa.1976). Several factors prompted the Court to withhold such action. First, the transfer would have been without notice to the parties. *See, e. g., Riordan v. W.J. Bremer, Inc.*, 466 F.Supp. 411, 418 (S.D.Ga.1979) *citing Swindell-Dressler Corporation v. Dumbauld*, 308 F.2d 267, 273–274 (3d Cir. 1962). Second, the defendants involved have been named in a purported class action, Part VIII, *supra*, and thus the plaintiff may not choose to reinstitute an action against these defendants in their respective states but may instead proceed on the premise that a class will be certified and these defendants will be included as unnamed members. However, the Court wants to emphasize that it is in no way intimating or foreseeing that a class will indeed be certified. The choice on how to proceed, if at all, against these defendants over whom this Court lacks jurisdiction remains, of course, entirely with the plaintiff. In any event, the Court considered a transfer, rather than a dismissal, as was done in *Shong Ching Lau, supra*, to be an inappropriate option in this case.

*V. Plaintiff Arthur Treacher's Fish & Chips, Inc. Motion for the Entry of a Default Judgment on its Complaint Against William Condren on the Issue of Liability/Defendant William J. Condren's Motion in Opposition to Plaintiff's Motion for a Judgment by Default*

### A. Background

Within this section, the Court will address and resolve the above two captioned motions. The first is plaintiff's motion for a default judgment against Condren. The second is defendant Condren's cross-motion to set aside the entry of default.[18] Due to the obvious correlation between these two motions,[19] they will be jointly analyzed.

The Complaint was filed on March 19, 1981 and defendant was served by certified mail in April, 1981. Defendant failed to respond or otherwise move and a default was entered by the clerk of the court on June 3, 1981. *See* Fed.R.Civ.P. 55(a); Docket Entry No. 32. Plaintiff now seeks from the Court the entry of a default judgment. *See* Fed.R.Civ.P. 55(b)(2). On June 30, 1981, defendant filed his motion in opposition[20] which also moved the Court to set aside the entry of the default. *See* Fed.R. Civ.P. 55(c). Thus, we have the entry of a default, a plaintiff who seeks to have a judgment entered on the default, and a defendant who seeks to have the entry of default set aside.

Rule 55(c) allows for the setting aside of an entry of default where "good cause" for doing so exists. In full, the rule states: "For good cause shown the court may set aside an entry of default and, if judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." The rule explicitly distinguishes between an "entry of default" and a "judgment by default." Plaintiff in this case presently has the former, but the latter, and thus the provisions of Rule 60(b) are not directly applicable. Nevertheless, the factors set forth in cases deciding applications under Rule 60(b) are relevant to a determination of whether "good cause" exists to warrant the grant of the Rule 55(c) application. *See, e. g., Spica v. Garczynski*, 78 F.R.D. 134, 135 (E.D.Pa.1978); 10 Wright & Miller, *supra*, § 2692 at 301–302.[21] Those pertinent factors are whether plaintiff would be substantially prejudiced by the removal of the default; whether defendant has presented a meritorious defense to the action; and, whether defendant's failure constitutes "excusable neglect." *See General Tire & Rubber Company v. Olympic Gardens*, 85 F.R.D. 66 (E.D.Pa.1979), and cases cited therein. Resolution of the question lies within the sound discretion of the trial court, applying a standard of liberality and resolving all doubts in favor of the defaulting party. *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244–245 (3d Cir. 1951). In sum, default judgments are not looked upon favorably, particularly

---

Third, a transfer of this action may be premature in the event the plaintiff, through discovery, obtains additional facts not presently before the Court from which it would appear that the Court could obtain personal jurisdiction over these defendants. In such a case, plaintiff's recourse would be to reinstitute the action against the defendants in this forum alleging the additional facts upon which the Court could sustain the exercise of in personam jurisdiction. *See Orange Theatre Corp. v. Rayherstz Amusement Corp., et al.*, 139 F.2d 871, 875 (3d Cir.), *cert. denied*, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944).

**18.** Defendant Condren has also moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). *See* Part VI, *infra*, for a discussion and resolution of this motion.

**19.** *See, e. g.*, 10 Wright & Miller, *supra*, § 2692 at 298–299.

**20.** The parties agreed that defendant would have until June 30, 1981 to respond to plaintiff's motion. *See* MDL Docket Entry No. 32.

**21.** The factors outlined in Rule 60(b) are additionally relevant due to the pendency of plaintiff's Rule 55(b)(2) motion. These factors should be examined to determine whether grounds for the vacation of a default judgment exist, thus warranting a denial of plaintiff's motion in the first instance. *See* 10 Wright & Miller, *supra*, § 2692 at 299 and n.40.

when significant damages may be involved. *Id.* at 245.

With the above concepts in mind, the Court turns to an examination of the present situation.

### B. *Meritorious Defense*

■ The first inquiry is whether defendant has presented a meritorious defense in support of his motion. *See Medunic v. Lederer*, 533 F.2d 891, 893 (3d Cir. 1976). The complaint, in Count I, alleges a conspiracy to violate the antitrust laws. *See Complaint*, ¶¶ 67–85. Condren is specifically named in ¶¶ 55a and 75:

> 55a. Defendant William Condren, who maintains his principal place of business at a [sic] West 57th Street, New York, New York, 10019, is active as an agent of the Franchisee Association and some of the other defendants.
>
> 75. As further part of said conspiracy:
>
> . . . . .
>
> (b) defendant Franchisee Association, and/or its members, *defendant Condren*, defendant Horstmyer and other unnamed co-conspirators agreed to force and coerce the sale of Arthur Treacher's to the defendant Franchisee Association, and/or members thereof, and/or other unnamed co-conspirators, and/or others;
>
> (c) defendants Horstmyer and *Condren* aided and abetted and continue to aid and abet the other defendants and their unnamed co-conspirators in their attempts to destroy the value of Arthur Treacher's in order to force a sale of Arthur Treacher's to the Franchisee Association and/or members thereof, and/or other unnamed co-conspirators, and/or others.

(emphasis added). Defendant attached to its motion a copy of the Answer which he seeks leave to file.[22] In it, he denies the above allegations as well as denying other material allegations which may pertain to Condren. Defendant also sets forth affirm-

ative defenses of lack of personal jurisdiction, (*but see infra*, Part VI), improper venue; failure to state a claim and improper service. Plaintiff contends that mere denials in the Answer, unsupported by specific factual allegations, are insufficient to sustain defendant's burden of establishing a meritorious defense. Although agreeing with plaintiff's reading of relevant precedents which support this general contention, *see Reid v. Liberty Consumer Discount Company of Pennsylvania*, 484 F.Supp. 435, 439 (E.D.Pa.1980); *Pennsylvania National Bank & Trust Company v. American Home Assurance Company*, 87 F.R.D. 152, 155 (E.D.Pa.1980); *Nelson v. Coleman Company, Inc.*, 41 F.R.D. 7, 9–10 (D.S.C.1966), the Court nevertheless does not agree with plaintiff's specific conclusion that a meritorious defense is absent in the present case. In the first place, the allegations in the Complaint pertaining to Condren are somewhat general in nature, thus hampering defendant's task of presenting a meritorious defense.[23] The burden is further hampered because defendant has to present a meritorious defense seeking to establish a negative—that he did not take part in the alleged conspiracy. The Court is not suggesting that the burden should be shifted to plaintiff to prove its allegations at this juncture, but these factors are indicative of the difficulty defendant faces at the embryonic stage of this complex litigation in attempting to satisfy the Court that a meritorious defense exists for purposes of the Rule 55(c) application. Secondly, however, and determinative, are the averments contained in Condren's affidavit. Defendant's affidavit, submitted in support of his motion, states that the only dealings defendant had with any of the other named defendants occurred in the Fall of 1980 when he reviewed information pertaining to plaintiff and met with, among others, defendants Horstmyer and Schwerin with a view to-

---

**22.** In fact, defendant filed an out of time Answer, after the default was entered. Docket Entry No. 55.

**23.** Although the allegations are general in nature, the Court has already concluded, at least

with regard to defendant Horstmyer, that the allegations are sufficient to withstand a motion for a more definite statement. *See* Part II.C. *supra*.

ward ascertaining whether any of defendant's clients [24] might be interested in investing in plaintiff. Thus, the factual assertions contained in the affidavit tend to buttress defendant's denial of any involvement in the alleged conspiracy. Reading the affidavit and answer attached to defendant's motion together, and construing them liberally, the Court finds that defendant has presented a potentially meritorious defense sufficient for the purposes *of this motion* to set aside the entry of default. *But see* note 28 *infra.*

### C. *Prejudice*

■ Clearly, plaintiff will not be greatly prejudiced should this default be set aside. Any argument of prejudice occasioned by the delay which may result if the default is set aside surely misses the mark given the size of this litigation and the sometimes unavoidable delays which have already occurred for a variety of reasons. Any further slight delay occasioned by a grant of defendant's motion will not result in substantial harm to the plaintiff which would justify a denial of defendant's motion. The Court can see no other harm which would accrue to the plaintiff by a grant of defendant's motion.

### D. *Excusable Neglect*

The final task in ruling upon this motion is to consider whether defendant's failure to timely respond is excusable.

Defendant's reason for not responding in time can be gleaned from his motion and supporting affidavit. Defendant states the following in paragraph nine of his affidavit:

9. On March 19, 1981, plaintiff filed the Complaint in this action. On or about April 17, 1981, I received a copy of the Summons and Complaint by first class/registered/certified mail. Believing that the Summons and Complaint were required to be served upon me personally, in order for there to be proper service, I concluded that I had not been properly served. Accordingly, I failed to plead or otherwise move with respect to the Complaint.

Defendant's brief adds the following gloss to his neglect:

Moreover, there is nothing in Condren's affidavit or elsewhere in the record to indicate that Condren's failure to respond in the mistaken belief that he had not been properly served was the result of a "tactical decision" taken in furtherance of a litigation position; it is apparent that Condren merely thought—mistakenly—that the papers received in the mail were a precursor of personal service and that his obligation to respond would not be triggered until the latter event occurred.

*Defendant Condren's Memorandum of Law in Further Support of his Motion to Set Aside Entry of Default, Etc.,* Docket Entry No. 64 at 3. ("Supplemental Memorandum"). Plaintiff, on the other hand, disagrees with defendant's characterization of the neglect contending that defendant's failure to respond was an intentional procedural maneuver and a tactical decision. As such, plaintiff argues, defendant's action cannot be considered "excusable neglect." *See Paramount Packaging Corp. v. H. B. Fuller Company of New Jersey,* 190 F.Supp. 178, 181 (E.D.Pa.1960) (defendant who ignores purported service of process does so at his own risk).

This issue is concededly the most difficult aspect of defendant's application. His conduct which resulted in the default entry cannot be condoned. Furthermore, plaintiff's viewpoint is not without merit. Nevertheless, in an exercise of the broad discretion which the Court has when deciding a Rule 55(c) application, *see e. g., Teal v. King Farms Company,* 18 F.R.D. 447 (E.D.Pa.1955), and taking into consideration all of the circumstances of this case, the Court concludes, albeit somewhat reluctant-

---

**24.** Defendant's affidavit describes himself as an investment banker, with his principal activity being the arrangement of financings, acquisitions and mergers.

ly, that in the interest of justice the default should be set aside.[25]

▮▮▮▮ The Court's decision is prompted by the interrelationship of a variety of circumstances present in this case. Before discussing those circumstances, the Court notes that while ample precedent exists for the setting aside of defaults, *see, e. g., Pizzichil v. Motors Insurance Corporation,* 90 F.R.D. 119 (E.D.Pa.1981); *General Tire, supra; Caruso v. Drake Motor Lines, Inc.,* 78 F.R.D. 586 (E.D.Pa.1978); *Wolfsohn v. Raab,* 11 F.R.D. 254 (E.D.Pa.1951), the varying factual circumstances leading to these decisions reduce their precedential value. This is especially true when faced with a motion to set aside an entry of default, as opposed to a default judgment. The standards guiding the courts when considering whether to reopen a case are more liberally interpreted in the case of a *default entry* by the clerk and greater discretion is involved than would be otherwise if faced with the finality of a *default judgment.* *See Schartner v. Copeland,* 59 F.R.D. 653, 656 (M.D.Pa.) *aff'd,* 487 F.2d 1395 (1973); *see generally* 10 Wright & Miller, *supra,* § 2696 at 335. Indeed, although the standards applicable to Rule 60(b) motions provide some guidance, once the threshold requirement of a meritorious defense is established then the Court's broad discretion comes into play in weighing the other relevant factors. *Nash v. Signore,* 90 F.R.D. 93, 94 (E.D.Pa.1981). Those relevant factors, in the Court's view, are first, the overriding policy disfavoring defaults and the Court's desire for a trial on the merits. Additionally, there is a potentially tremendous damage exposure in this case. Plain-

tiff will suffer no prejudice if the default is set aside and defendant has presented a potentially . valid defense. Defendant expeditiously moved to remedy his neglect and is clearly not intentionally trying to delay this litigation. *Cf. Hendricks v. Alcoa Steamship Company, Inc.,* 32 F.R.D. 169 (E.D.Pa.1962) (default entered for willful failure to comply with discovery). An entry of default rather than a default judgment is in effect, and the Court is accordingly viewing defendant's motion a bit more liberally than it would if additional delay on his part had resulted in a judgment against him. Finally, resolving all doubts in defendant's favor, the Court accepts his characterization of the neglect as a mistaken belief that the mailed service was invalid and but a precursor of personal service. Against these factors the Court weighs its desire to see the rules being adhered to and process respected. Respect of judicial process will follow only if defaults are not readily set aside. However, the Court finds in the present case that defendant's actions did not result from disrespect of judicial process, nor was it an intentional tactical decision, but merely one borne out of ignorance.[26] In the interest of justice, the Court will excuse this improvidence. *Cf. Thorne v. Commonwealth of Pennsylvania,* 77 F.R.D. 396 (E.D.Pa.1977). In so doing, the Court in no way condones the actions of the defendant. The rationale for this decision has been sufficiently explicated and it lies within the bounds of permissible discretion. However, the closeness of the call, and the noted cavalier attitude of defendant, warrant the imposition of costs against him. An order will be entered

---

**25.** The Court has examined and considered the motion of ATFC for a default judgment on its amended counterclaim against Worcester Quality Foods, Civil Action No. 81–3173, MDL Docket Entry No. 192 and Worcester's Motion to Set Aside Entry of Default with supporting Affidavit and Memorandum. MDL Docket Entry Nos. 197–199. Finding the reasoning in *Teal, supra,* directly applicable to Worcester's case, its motion will be granted and Arthur Treacher's motion for a default judgment will be denied.

**26.** Plaintiff placed emphasis on the fact that Condren is a member of the New York Bar and thus is "fully familiar with practice before federal courts." Plaintiff's Memorandum of Law in Further Support of Motion for Entry of a Default Judgment, MDL Docket Entry No. 41 at 2. The fact that Condren is a member of the Bar is certainly relevant and concededly tends to belie a finding of excusable neglect. However, this factor is not determinative since Condren is an "investment banker" and not a "lawyer" in the sense that he actively engages in the practice. *See* Defendant's Supplemental Memorandum at 2–3.

granting defendant's motion and denying plaintiff's motion. The order will be conditioned upon defendant's paying plaintiff's costs and attorney's fees incurred in the presentation of both motions.[27] *Cf. Hendricks, supra.*

## VI. *Defendant Condren's Motion to Dismiss for Lack of Personal Jurisdiction*

### A. *Background*

Some of the facts pertinent to defendant Condren have been discussed in the previous section, Part V, *supra.* In addition to moving to have the entry of default set aside, Condren has moved to dismiss the complaint for lack of personal jurisdiction. Additional facts, relevant to the present motion, follow.

Defendant Condren is a New York resident who maintains his principal place of business in New York City. *Complaint,* ¶ 55a; *Affidavit of Defendant William Condren,* ¶ 2. In connection with his business, *see* note 24, *supra,* Condren states in his affidavit that he met with defendants Horstmyer, Tolles and Schwerin in Philadelphia on October 21, 1980 in order to determine whether any of his clients would be interested in investing in Arthur Treacher's. *Affidavit of Defendant Condren,* ¶ 3. Condren also wrote to Edward Piszek, the owner of plaintiff, to advise Piszek that a client of Condren's might be interested in acquiring the plaintiff. *Id.,* ¶ 4. Condren argues that these are the only contacts which he has had with this forum and that they are too minimal to justify the exercise of personal jurisdiction over him.

### B. *The Motion*

█ Contrary to the situation presented by the motions of ATNE and Yegen Foods, *see* Parts III and IV, *supra,* where the question involved the assertion of jurisdiction on a conspiracy theory since those defendants totally lacked direct contacts with Pennsylvania, the question presented here is whether Condren's admitted, albeit minimal, contacts with Pennsylvania subject him to in personam jurisdiction without offending applicable due process standards.

Again, in deciding this motion, the Court will accept the allegations in the Complaint as true and view them in the light most favorable to the plaintiff. *See Melo-Sonics Corp.; Oxford First Corp., supra.* Condren is specifically named in two paragraphs of the Complaint, paragraphs 75(b) and (c), quoted in Part V.B., *supra. See also* Complaint, ¶ 55a. These allegations charge Condren with a conspiracy to force and coerce the sale of plaintiff and with aiding and abetting the other defendants in their attempts to destroy the value of Arthur Treacher's in order to force a sale of the company. Accepting the truth of this allegation and construing the remainder of the Complaint and the other pleadings in the light most favorable to the plaintiff, the Court concludes that the meeting in Philadelphia, attended by Condren, Horstmyer, Tolles and Schwerin, is enough of a contact with this forum to justify the exercise of in personam jurisdiction over Condren without offending "traditional notions of fair play and substantial justice." *See International Shoe, supra,* 326 U.S. at 316, 66 S.Ct. at 158. *Cf. McGee, supra.* Furthermore, Condren testified at a deposition that, in connection with his financing business, a significant part of his activity has been in the Philadelphia area. *See* Memorandum of William Condren in Support of Cross-Motion to Dismiss the Complaint for Lack of Personal Jurisdiction, MDL Docket Entry No. 29, Exhibit 1 at 160. Therefore, it is at least arguable (although the Court deems it unnecessary to so find since Condren has conducted activity in Pennsylvania directly related to this cause of action) that this purportedly legitimate and unrelated conduct of business in Pennsylvania could subject him to this Court's jurisdiction in the present cause of action. *See Perkins, supra,* 342 U.S. at 446–449, 72 S.Ct. at 418–419. In any event, the Court finds that the meeting in Philadelphia attended by Condren, where

---

27. The Court strongly advises the parties involved to work out the amount to be paid amicably in order to avoid the potential need for a hearing or submission of affidavits to resolve this relatively minor issue.

the allegedly illegal activity occurred, provides a sufficient nexus with this forum so that personal jurisdiction may be exercised over this defendant.[28] Condren's motion to dismiss for lack of personal jurisdiction will therefore be denied.

VII. *Defendants, Treacher's of Middlesex, Inc., TRI–MID, Inc. and Louis J. Miazga, Motion to Dismiss*

### A. Background

These defendants have moved to dismiss on four grounds: (1) lack of personal jurisdiction, Rule 12(b)(2); (2) failure to state a claim upon which relief can be granted, Rule 12(b)(6); (3) lack of subject matter jurisdiction, Rule 12(b)(1); and, (4) lack of venue, Rule 12(b)(3).[29]

Defendant Miazga is an owner and officer of defendants Treacher's of Middlesex, Inc. ("Middlesex") and TRI–MID, Inc. ("TRI–MID"). The corporate defendants operate seven franchised restaurants in Worcester and Middlesex Counties, Massachusetts. They are incorporated under the laws of Massachusetts and have principal offices located in Connecticut. The defendants do not operate restaurants in Pennsylvania, nor are they licensed to do so. They have neither sold food in Pennsylvania, nor purchased supplies from Pennsylvania. *See* Affidavit of Louis J. Miazga in Support of Motion to Dismiss.

Miazga has attended three meetings of the ATFA. One occurred in Chicago on March 13, 1980; one was held in Philadelphia on June 24, 1980; and the third was in Baltimore on November 6, 1980. Defendant TRI–MID has contributed two thousand dollars to the ATFA—four hundred dollars at the Chicago meeting and sixteen hundred dollars in August of 1980. These payments were assertedly made for the purpose of helping to establish a legal defense fund to pay the franchisees' litigation costs. *See* Supplemental Affidavit of Louis J. Miazga in Support of Motion to Dismiss.[30]

With this basic factual context pertaining to these defendants in place, the Court will first examine the issue of personal jurisdiction.

### B. Personal Jurisdiction

■ Defendants' argument initially paralleled that of defendants, ATNE and Elliott. *See* Part III.B. *supra*. In their mov-

---

**28.** In Civil Action No. 80–3625, the Court was faced with Motions to Dismiss filed by defendants Delmarva F & C, Inc., Robert Searles, Dade County Food Systems, Inc., Thomas Gooding, Clipper Foods, Inc., and Spencer Vavas. These motions raised similar contentions. The Court entered a Bench Ruling and Order on March 23, 1981, denying these motions. Language utilized in that Bench Ruling is relevant here:

> There is no doubt that defendants ... conducted some activity in this state thus establishing contact, albeit minimal. Assuming that the alleged conspiracy was entered into during the Philadelphia meetings, the assertion of in personam jurisdiction would not offend "traditional notions of fair play and substantial justice." Motions to Dismiss should be sparingly granted, especially in complex antitrust cases. The jurisdictional facts in the instant case are somewhat intertwined with the substantive facts plaintiff will have to prove to establish liability.... With the case in this guise the court would deem it unfair to dismiss for lack of personal jurisdiction at this early stage. *See Oxford First Corp., supra*, at 193 n.2.

The Court notes the facial inconsistency between finding, on the one hand, that the Philadelphia meeting attended by Condren where

allegedly illegal activity occurred provides a sufficient nexus with this forum so that jurisdiction may be exercised over him, and finding, on the other hand, that Condren's affidavit and Answer set forth a meritorious defense sufficient for purposes of his Rule 55(c) motion, Part V.B., *supra*. This apparent inconsistency is the result of applying very different standards to the Rule 55(c) motion as opposed to the Rule 12(b)(2) motion. In the latter case, all doubts have been resolved in defendant's favor, the motion was viewed liberally, and the Court was considering, to the extent possible and necessary, the substantive merits of Condren's defense. In the former case, all doubts were resolved in plaintiff's favor, and the Court was considering a jurisdictional question the resolution of which obviously does not necessarily mean that Condren ultimately will be found liable.

**29.** *See* Part IX, *infra*.

**30.** Although Miazga attended meetings of the franchisee association and TRI–MID contributed monies to it, Miazga states in his affidavits that he never considered himself or his corporations to be members of the ATFA.

ing brief defendants argued that not only did they lack the requisite minimum contacts with Pennsylvania but that they have had *no contacts* whatsoever with Pennsylvania which would justify the exercise of in personam jurisdiction. However, defendants filed a reply brief with a Supplemental Affidavit in which defendant Miazga states at paragraph two:

> Upon review of my files, I have discovered that I attended a June 24, 1980 meeting of the Arthur Treacher's Franchisee Association in Philadelphia. Other than that June 24, 1980 meeting, I have not attended any meetings of the defendant franchisee association in Pennsylvania. I have also attended a franchisee association meeting in Chicago on or about March 13, 1980 and a meeting in Baltimore on or about November 6, 1980.

(emphasis added). With this additional fact—the admitted contact with this forum—the focus differs significantly from that which was utilized in the analysis of the argument presented by defendants ATNE and Elliott (and also defendants Dennis and Yegen, Part IV., *supra*) which hinged upon the total lack of contact with this forum. The additional and different issue under consideration in the present motion is whether defendant's presence at an ATFA meeting in Philadelphia constitutes sufficient contact with this forum to warrant the imposition of in personam jurisdiction.[31]

Plaintiff's complaint sets forth allegations of an unlawful conspiracy to violate the antitrust laws. Whether plaintiff will prevail is a substantive question going to the merits of the case which the Court will avoid at this early stage of the litigation in deciding this jurisdictional matter.[32] Viewing the papers before it in a light most favorable to the plaintiff, *see Oxford First Corp., supra,* a dismissal of these defendants under Rule 12(b)(2) would be inappropriate at this time. The facts before the Court leave little doubt that these defendants conducted some activity within this forum thus establishing some contact. Reading the pleadings liberally, and concluding for the purposes of this motion that the alleged conspiracy was entered into, at least in part, during the Philadelphia meeting, the assertion of in personam jurisdiction over these defendants on the basis of Miazga's presence at that meeting does not offend "traditional notions of fair play and substantial justice."[33] Accordingly, defendants' motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction will be denied.[34]

### C. *Failure to State a Claim Upon Which Relief can be Granted*

Defendants contend that the Complaint fails to state a claim upon which relief can be granted as to defendant Miazga. As to Count I, Miazga argues that he is not a member of the ATFA and is not himself a franchisee but is only an officer

---

**31.** Defendants state in their reply brief: "At this juncture the Court must determine whether or not defendant Miazga's one isolated contact with the Eastern District of Pennsylvania is sufficient to establish jurisdiction and venue in this district." *Memorandum in Reply to Plaintiff Arthur Treacher's Opposition to Defendants' Motion to Dismiss,* Docket Entry No. 54 at 2.

**32.** *See* note 28 *supra* and accompanying text.

**33.** *Id.*

**34.** In his moving brief, defendant Miazga makes the collateral argument that, even if he had transacted business in Pennsylvania as a corporate officer, jurisdiction cannot be asserted over him as an individual since he was acting on behalf of the corporation. The Court

does not agree. Corporate officers may be held "personally liable for the alleged tortious conduct of the corporation if they personally took part in the commission of the tort...." *Donner, supra* note 6, 480 F.Supp. at 1233 (citations omitted). A private antitrust suit is essentially a tort action. *See e. g.,* cases cited in Comment, *Contribution in Private Antitrust Suits,* 85 Dick.L.Rev. 119, 120 n.9 (1980). Hence, if the individual defendants involved could be held personally liable for the alleged antitrust violations, those same acts alleged in the complaint which may be sufficient to create substantive liability on the part of the individual officers and agents also inferentially are sufficient for purposes of asserting personal jurisdiction. *See Donner, supra* at 1234.

of two of the franchisee corporations. Although the complaint does focus primarily on the activities of the ATFA, formal membership is not a determinative fact or a predicate to a finding of liability. These defendants need not be found to be formal members of the ATFA in order for liability to be imposed for entering into an unlawful conspiracy with the other defendants, some of whom may be members of the association. Furthermore, Miazga's status as an officer of the defendant franchisees rather than as a franchisee himself will not shield him from liability if it is ultimately proven that on behalf of corporate defendants Miazga conspired to violate the antitrust laws. *See* note 34 *supra.* Thus, the question as to Count I is not whether Miazga or his corporations are members of the association, or whether Miazga himself is a franchisee, but rather whether Count I of the Complaint, read in a light most favorable to the plaintiff and with all doubts resolved in its behalf, states any valid claim for relief. *See* 5 Wright & Miller, *supra,* · § 1357 and cases cited therein. Applying this standard, Count I clearly survives Miazga's Rule 12(b)(6) motion.

■ Count II, however, presents an entirely different question. In Count II, plaintiff claims that defendants breached their franchise agreements by withholding contractually mandated royalty payments. Miazga argues that he signed the relevant agreements in his capacity as an officer of the corporations and that he did not assume any personal obligation on the agreements. Citing both Pennsylvania and Ohio law, Miazga therefore contends that Count II fails to state a claim upon which relief can be granted as to him individually. *See Memorandum in Support of Motion to Dismiss,* Docket Entry No. 19 at 12–13. The Court agrees. The Complaint is devoid of allegations that Miazga assumed any personal obligation to pay royalties and Count II will be dismissed as to him.[35]

### D. Subject Matter Jurisdiction

■ Defendants argue that since Count II alleges a breach of contract claim involving no federal question the Court lacks subject matter jurisdiction and this Count should be dismissed. Although there is no independent basis of federal jurisdiction grounding the breach of contract claims, plaintiff has pled and seeks to invoke this Court's pendent jurisdiction over Count II of the Complaint. Finding a substantial federal question presented in Count I, defendants' jurisdictional argument as to Count II is without merit. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Lentino v. Fringe Employee Plans, Inc.,* 611 F.2d 474 (3d Cir. 1979). An order will be entered dismissing Count II of the Complaint as to defendant Miazga. In all other respects, (other than the issue of venue, *see infra,* Part IX), the instant motion will be denied.

### VIII. Motion of Plaintiff Arthur Treacher's Fish & Chips, Inc. for Certification of a Defendant Class Action

#### A. Background

Plaintiff seeks to bring Count II of the Complaint in No. 81–1085 as a class action. Count II alleges a breach of contract on the part of the franchisee defendants for failing to pay contractually mandated royalties to Arthur Treacher's. Plaintiff grounds this claim upon this Court's pendent jurisdiction. Named as members and as representative parties of the purported class are a number of franchisee defendants who have been sued in their individual and corporate capacity.[36]

---

**35.** Plaintiff argues that the owner of a corporation can be held liable if he deprives a corporation of the necessary assets to meet its obligations. The Court has not considered this argument since the plaintiff has neither alleged nor pointed the Court to anything in the record in the way of factual support buttressing this theory of liability.

**36.** Plaintiff describes these defendants as those named in paragraphs 2 through 13 and 17 through 55 of the complaint. *See* Complaint, ¶¶ 88–89. These paragraphs of plaintiff's complaint (¶¶ 2–13 and 17–55) name twenty-nine corporate defendants and twenty-one individuals who are alleged to be owners of the various companies. The only exceptions are para-

The defendant class is defined by plaintiff as follows:

All franchisees of Arthur Treacher's who have executed written contracts with Arthur Treacher's and have refused and/or failed to make royalty payments owed to Arthur Treacher's pursuant to the terms of the written contracts between them and Arthur Treacher's.

Complaint, ¶ 88. Plaintiff contends that certification of a class of franchisees whose royalty payments to Arthur Treacher's are due and owing is appropriate under Fed.R. Civ.P. 23(b)(1), (2) and (3). As expected, many of the named defendants have opposed certification for a variety of asserted reasons.[37] With the proper adversarial framework on this difficult issue in place, the Court will turn to an analysis of the question.

### B. *Rule 23*

█ Certification of a class action is governed by Rule 23 of the Federal Rules of Civil Procedure. Rule 23(a) provides:

One or more members of a class *may sue or be sued* as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(emphasis added). As reflected in the emphasized language of section (a) *supra*, the rule authorizes the use of defendant, as well as plaintiff, class actions. *See* Note, *Defendant Class Actions*, 91 Harv.L.Rev. 630, 633 (1978). Thus, the plaintiff may proceed against the defendants as a class, but only if the requirements set forth in Rule 23(a) are satisfied. Additionally, if the plaintiff succeeds in establishing the existence of the four criteria contained in Rule 23(a), the class must then fit into at least one of the three categories contained in section (b) of Rule 23:

An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosecution of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the

---

graphs 2 and 3 which name the ATFA (¶ 2) and ATCO, Ltd. (¶ 3). ATCO, Ltd. is alleged to be "a company incorporated specifically to perform the purchasing function for Franchisee Association members."

**37.** Defendants' argument focuses upon the prerequisites contained in subsections (a)(3) and (a)(4) as well as section (b) of Rule 23. De-

fendants contend that none of these criteria are met. However, in opposing class certification, defendants do not discuss the factors of numerosity or commonality or argue that these factors are absent here. The lack of argument from defendants inferentially points to their concession of this point.

class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The burden of establishing the existence of the above prerequisites rests with the plaintiff, the proponent of the certification at issue. *See, e. g., City of Philadelphia v. Emhart Corporation,* 50 F.R.D. 232, 234 (E.D.Pa.1970). With the foregoing in mind, the Court will consider whether the factors contained in Rule 23(a) are present here.

### C. *Rule 23(a)(1)—"Numerosity"*

■ The first requirement under the rule is that there exist too many class members to make joinder of all of them practicable. This requirement is clearly met in the present case. The named defendants total approximately thirty corporate franchisees with the total number of purported class members alleged to be at least one hundred fifty. *Complaint,* ¶ 30(a). While there is no precise formula for gauging when a particular number of class members renders joinder impracticable, the alleged existence of at least one hundred fifty franchisees who have stopped paying royalties certainly satisfies the numerosity requirement. *Cf. Butkus v. Chicken Unlimited Enterprises, Inc.,* 15 F.R.Serv.2d 1067 (N.D.Ill.1971) (certification of a plaintiff class of 35 franchisees).

### D. *Rule 23(a)(2)—"Commonality"*

■ The second requirement which must be met before a class action may be brought is the existence of common questions of law or fact. The rule goes no further than to state the requirement; it does not define what a common question is. Similarly, many courts which have considered the commonality requirement have liberally applied it to the particular factual circumstances, but without adding much substantive guidance as to how the criterion should be applied. *See, e. g.,* 7 Wright & Miller, *supra,* § 1763 at 604 n.88 (West 1972

& Supp.1981); *Developments in the Law— Class Actions,* 89 Harv.L.Rev. 1318, 1454 n.4 (1976). One court has stated that "commonality is satisfied when the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Gordon v. Forsyth County Hospital Authority, Inc.,* 409 F.Supp. 708, 717–718 (M.D.N.C.), *aff'd in part, vacated in part on other grounds, and remanded,* 544 F.2d 748 (1976) (per curiam) (citation omitted). Another approach, taken in cases involving alleged violations of the securities laws, focused upon whether a common course of conduct was present. *E. g., Entin v. Barg,* 60 F.R.D. 108, 113 (E.D. Pa.1973); *Dolgow v. Anderson,* 43 F.R.D. 472, 488–489 (E.D.N.Y.1968). Also helpful is the view offered in a recent commentary that a common question is presented "if the question states an element of the claim and if the group that will be affected by adjudication of the complaint is in fact described by the class allegations in the complaint." *Class Actions, supra,* 89 Harv.L.Rev. at 1455.

Rather than engaging in an extensive doctrinal analysis of the meaning of commonality under Rule 23(a)(2), the Court finds that under any of the definitional approaches noted above, the requirement that common questions exist is satisfied in this case.[38] At least one common legal question is framed in Count II of the complaint—the question of whether defendants are in breach of the franchise agreements for failing to pay royalties. The commonality of factual questions is obvious. The purported class would consist of franchisees of the plaintiff who have all stopped paying royalties. The Court is not suggesting that every issue of law or fact presented by Count II of the complaint is common to every class member. Nor is the Court analyzing at this juncture whether the questions which are common predominate over the individual questions. *See* Rule 23(b)(3).

---

**38.** Despite the similar lack of evidence in support of the class allegations of numerosity and commonality, the Court considers these factors to be obviously present in this case. As already noted, defendants do not contend otherwise. *See* note 37 *supra.*

Neither finding is necessary at this stage. *Axelrod v. Saks & Co.*, 77 F.R.D. 441, 444 (E.D.Pa.1978). At least some ·common questions are presented sufficient to overcome the hurdle of Rule 23(a)(2).

### E. Rule 23(a)(3) and (4)—"Typicality" and "Adequate Representation"

In addition to finding a sufficient number of class members and questions of law or fact common to them, class action treatment must be predicated on a finding that "the claims or defenses of the representative parties are typical of the claims or defenses of the class," and that "the representative parties will fairly and adequately protect the interests of the class." These two criteria tend to naturally overlap and they will be discussed together. *See generally* 7 Wright & Miller, *supra*, § 1764.

■ The plaintiff's position is that typicality is present because each franchisee defendant allegedly signed the same standard agreement calling for the payment of royalties and the defendants named in this action have filed the same claims and defenses in response to Arthur Treacher's complaint. Furthermore, plaintiff asserts that the presence of legal issues common to the class rules out the possibility of inadequate representation or unfairness to the absentee members. Plaintiff correctly points out that the named defendants need not be willing representatives, merely adequate ones. *See Marcera v. Chinlund*, 595 F.2d 1231, 1239 (2d Cir.), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). There is no doubt that the attorneys representing the named defendants would be more than adequate guardians of the purported class interests *assuming the presence of typicality and the absence of conflicting interests between the representative parties and the other class members.* It is at this undoubtedly crucial point, concerning the satisfaction of the typicality and adequate representation prerequisites, that the plaintiff encounters potential difficulties.

■ Defendants set forth several factors which in their view tend to belie class certification. Generally, defendants first point out that the burden rests with the plaintiff in this case to prove, and not merely allege, that the prerequisites for class treatment are met. Reliance is placed upon *Rossin v. Southern Union Gas Co.*, 472 F.2d 707 (10th Cir. 1973) wherein the court noted "that a class action does not exist merely because it is so designated by the pleadings.... The plaintiff has the burden of proving that the action is appropriately a class action." *Id.* at 712 (citations omitted). In this case, with regard to the class action motion, the Court has before it only the complaint and plaintiff's moving brief. This is not enough for the Court to make an informed judgment as to whether the prerequisites of typicality and adequate representation are present.

More specifically, defendants set forth several arguments attempting to demonstrate the atypical nature of the various franchisees' situations which, if well founded, would in turn militate against a finding that the named defendants would adequately represent the interests of the class as a whole. *See, e. g., Rosado v. Wyman*, 322 F.Supp. 1173, 1193 (E.D.N.Y.), *aff'd on other grounds*, 437 F.2d 619 (2d Cir. 1970), *aff'd*, 402 U.S. 991, 91 S.Ct. 2169, 29 L.Ed.2d 157 (1971). For example, defendants assert that there are material variations in the contracts at issue. Defendants also claim that there are a variety of reasons why the franchisees withheld royalties and these different reasons may result in different and individual defenses, some of which may be crucial to some franchisees while inapplicable to others. Because the franchisees operate in many diverse states, there may be conflicting legal standards applicable. In addition to being atypical, the interests of the class may also be in direct conflict. Some of the franchisees have counterclaimed against plaintiff for breach of contract for failing to ensure that other franchisees paid cooperative advertising expenses. Obviously, the interests of those putative class members who did not keep up their payments into advertising co-ops conflicts with the interest of those franchisees who did contribute. Particularly persuasive

is the assertion by defendants that some of the putative class members have ceased operating Arthur Treacher's restaurants. The interests which the franchisees who are still in the system will want to protect at trial will vary, perhaps significantly, from the interests of those defendants no longer operating restaurants. The sum of these factors leads the Court to conclude that there is a valid question as to the propriety of class treatment in this case. The record as it now stands does not provide an answer to these questions. The Court simply has not been provided with enough information with which to reach an informed judgment as to whether a class should be certified. In a sense, therefore, plaintiff has failed to sustain its burden. Nevertheless, an evaluation of whether the burden imposed by Rule 23 upon the class action proponent has been met in a given case naturally ought to be made after all available information is before the Court. The Court will not deny the present motion on the grounds that plaintiff failed to satisfy its burden of demonstrating the appropriateness of class action treatment if, in fact, there is evidence not presently before the Court with which the plaintiff could carry its burden. In other words, the Court is unwilling to render a decision, one way or the other, based upon what it perceives to be a lack of information. Therefore, the Court will order an evidentiary hearing and supplemental briefing before deciding this important issue.

Although conducting an evidentiary hearing prior to ruling on a Rule 23 motion is not a mandatory procedure, it is nonetheless the appropriate course to follow in this case. *Compare Bleznak v. C.G.S. Scientific Corporation*, 61 F.R.D. 493, 496 (E.D.Pa.1973), *with Cobb v. Avon Products, Inc.*, 71 F.R.D. 652, 654 (W.D.Pa.1976). The Court is very familiar with the overall nature of this litigation. Nevertheless, questions pertaining to the maintainability of Count II of No. 81–1085 as a class action remain unanswered in the pleadings to date and in the parties' briefs. "Although in rare instances, maintainability may be determined on the basis of the pleadings, ... if there is

any genuine doubt with respect to the propriety of a class action, a preliminary evidentiary hearing is essential." *Satterwhite v. City of Greenville*, 578 F.2d 987, 998 (5th Cir. 1978) (citations omitted), *vacated on other grounds*, 445 U.S. 940, 100 S.Ct. 1334, 63 L.Ed.2d 773 (1980); *see generally* 7A Wright & Miller, *supra*, § 1785. Thus, the first order of business, following the Second Pretrial Conference, *see* Part XI, *infra*, will be the scheduling and holding of a hearing on the class action question. A review and summary of the questions which plaintiff will want to pursue at this hearing follows.

First, what evidence supports the assertion that the claims or defenses of the representative parties are typical? In this regard defendants claim that variations in the contracts themselves and varying reasons for withholding royalties will necessarily lead to different claims or defenses, thus militating against a finding of typicality. Second, does the potential conflicts of law issue pointed out by defendants militate against class action treatment? Third, are there not viable conflicts among the class members which would result in some interests not being adequately represented? If so, would subclassing resolve these conflicts? *See* Rule 23(c)(4)(B). If a class was certified and divided into appropriate subclasses, *i. e.*, those defendants still operating restaurants as opposed to those who do not; those defendants who paid advertising co-op fees as opposed to those who did not, etc.; do the named members of the putative class represent all of the potentially diverse interests or would additional representatives need to be named? These questions are not meant to be exclusive but merely indicative of the areas in which the court lacks evidence from which an informed judgment could be rendered. Thus, plaintiff will want to focus its attention upon the "typicality" and "adequate representation" prerequisites, as well as buttressing its contention with regard to which, if any, subsection of Rule 23(b) the class fits into. Pending a supplementation of the record with regard to questions similar to those mentioned above, a decision on whether to

maintain Count II of No. 81–1085 as a class action will be deferred. If the parties feel that the record can be appropriately supplemented without recourse to a hearing, *i. e.,* through affidavits in conjunction with further briefing, they should make this view known to the Court at the October 20th conference and this option will be considered. *See, e. g., Albers v. Hycel, Inc.,* 18 FEP Cases 867, 871–872 (S.D.Tex.1978), *relying upon, Jones v. Diamond,* 519 F.2d 1090 (5th Cir. 1975).

### IX. *Venue Issues*

This Memorandum has purposely avoided a discussion and resolution of the many issues of venue present in this case. Several of the motions considered herein have raised questions going to whether this is the appropriate forum within which to try the cases pertaining to those defendants. Additionally, there are at least four motions to transfer pending which the Court has not addressed. *See Interim Memorandum, supra,* at 2. The Court had originally intended to dispose of the venue issues in this opinion and the viewpoints of counsel as to the "ripeness" of these motions was invited. After receiving response from both sides and considering the propriety of addressing these venue issues, the Court agrees with the view expressed in the Separate Response of Liaison Counsel for Franchisees, et al To Interim Memorandum of August 21, 1981, MDL Docket Entry No. 123 at 1–2:

> Insofar as discovery and pretrial are concerned these motions are moot by virtue of the transfers which have already taken place pursuant to 28 U.S.C. § 1407. Thus, the only significance left to a transfer motion is the question of where the ultimate trial on the merits will take place.
>
> In our view there is no reason to deal with this issue now. The chief reason for disturbing the plaintiff's choice of forum would be for a consolidated trial, and it seems obviously too early to be making decisions as to which of the numerous pending cases could or should be tried together. Moreover, these four ·cases

were all started by franchisees seeking to avoid termination and cutoff of supply. The cases may well become moot before the issue of consolidated trials is reached. In any event, when the Court has reached at least tentative conclusions concerning the trial procedure for all cases, plaintiffs in these actions may no longer wish to contest the transfer. For example, if the plaintiff in one of these cases is necessarily going to be involved in the trial of one of the other cases, he might prefer to surrender his original choice of forum for the sake of avoiding the burden of two trials. Given the extent of the current burden on the Court and the parties, we suggest that it is undesirable to proceed now to deal with motions which have no immediate relevance, and which may never have to be decided.

This view seems entirely reasonable. Therefore, with regard to the pending transfer motions as well as the objections to venue raised in the Rule 12(b)(3) motions still pending, the Court will adopt the procedure of deferring a decision as suggested by liaison counsel for the franchisees.

### X. *Summary*

The Court will enter an Order in accordance with the foregoing opinion which will effect the following. Defendant Horstmyer's motions to dismiss for insufficiency of service and for a more definite statement will both be denied. *See* Part II, *supra.* Horstmyer's motion to strike plaintiff's amendment to the complaint filed in No. 80–3625 will be granted. *See* note 3, *supra.* Plaintiff's motion to amend in No. 80–3625 is under advisement pending counsel's views as to whether it may be considered moot. *Id.*

The motion to dismiss for lack of personal jurisdiction filed by defendants ATNE and Elliott will be granted. Their alternative motion pursuant to Rule 12(b)(3) is thus mooted. *See* Part III, *supra.* Similarly, the motion on behalf of Dennis and Yegen Foods will be granted and their venue objections are likewise mooted. *See* Part IV, *supra.*

As for defendant Condren, plaintiff's motion for entry of a default judgment will be denied and, concomitantly, Condren's motion to set aside the entry of default will be granted. *See* Part V, *supra*. Similarly, Worcester's Motion to Set Aside the Entry of Default will be granted and Arthur Treacher's motion for a default judgment on its amended counterclaim will be denied. *See* note 25, *supra*. Condren's motion to dismiss for lack of personal jurisdiction will be denied as will be the similar motion filed by defendants Middlesex, TRI–MID and Miazga. *See* Parts VI & VII, *supra*. However, Miazga's motion to dismiss Count II of the Complaint in No. 81–1085 for failure to state a claim against him will be granted. *See* Part VII.C., *supra*.

The motion of plaintiff for class action certification is under advisement pending an evidentiary hearing and supplemental briefing addressing the questions raised in Part VIII, *supra*. In lieu of an evidentiary hearing the parties may agree that the further evidence needed can be provided through affidavits and other submissions, including briefs. If the parties so stipulate, the Court will consider this option. *See, e. g., Albers, supra*. Finally, a ruling on the venue issues is deferred as explained in Part IX, *supra*.

Before concluding this opinion with an appropriate order, the Court will offer its views as to the purpose and scope of what we will hope to accomplish at the October 20th conference.

## XI. *The Second Pretrial Conference—October 20, 1981 at 2:00 p. m.*

Drawing upon the Tentative Draft of the Fifth Revision of the Manual for Complex Litigation (Manual) for some guidance where relevant, the Court offers the following suggested agenda for the upcoming conference.

The first order of business will be the defining of a strategy for handling the class action motion. If a hearing is to be held, we will attempt to schedule a date and time as this issue ought to be resolved as expeditiously as possible. *See* Manual, § 2.10. The parties will be asked to suggest an appropriate schedule for submission of supplemental briefs on this issue as well.

The second topic for discussion ought to be the pending preliminary injunction motions. *See, e. g., Interim Memorandum, supra* at 3–4. Following a resolution of the class action issue, the Court intends to commence the scheduling of hearings. In accordance with the Stipulation filed on July 17, 1981, MDL Docket Entry No. 61, the parties have the right to introduce additional evidence to supplement the A&B record contingent upon submission of an Offer of Proof. *See Stipulation, supra*, ¶ 6.

The third major topic for discussion at this conference will be the status of discovery. In this regard, the cooperative input of counsel will be particularly helpful. For example, the Court will want to know where we are in terms of discovery, what roadblocks are being encountered, any pending motions which should be afforded expeditious treatment, any anticipated motions which perhaps could be avoided through amicable discussions at this conference, estimates of a discovery cut-off date, etc. In sum, for the Court's benefit, counsel should be prepared to thoroughly "air out" their views as to where we are in the discovery process and where we are heading. *See also* Manual, §§ 2.20–2.80.

The above three topics—class action motion, preliminary injunction motions, and status of discovery—are the major but not necessarily exclusive areas for discussion. The Court intends to follow this general framework at the conference but is certainly open or amenable to suggested modifications from counsel. In fact, the Court will direct liaison counsel to submit proposed agenda for this conference. The agenda should outline what topics counsel want addressed at this meeting and what they consider to be the parameters of discussion relevant to each particular topic. These agenda will be due, *without exception or extension*, no later than Monday, October 19, 1981 at 10:00 A.M. In addition to submitting the agenda at this date and time, counsel should also submit copies of orders which they may want the Court to consider

entering at the conference. (The Court is referring of course to orders other than proposed orders attached to pending motions).

An Order is attached implementing the decisions rendered herein as summarized in Part X, *supra.*

## ORDER

AND NOW, this 15th day of October, 1981, in accordance with the foregoing Memorandum:

Defendant Kenneth L. Horstmyer's Motion to Dismiss for Insufficiency of Service of Process or in the Alternative for a More Definite Statement is DENIED.

Defendant Horstmyer's Motion to Strike Plaintiff's Amendment to the Complaint is GRANTED.

Motion to Amend Plaintiff's Complaint is under advisement pending advice from counsel as to whether or not it may be considered as MOOT.

Motion of Defendants Arthur Treacher's of New England, Inc. and Emanuel J. Elliott to Dismiss for Lack of Personal Jurisdiction is GRANTED.

Motion of Defendants Yegen Foods, Inc. and Robert Dennis to Dismiss the Complaint for Lack of Personal Jurisdiction is GRANTED.

Plaintiff Arthur Treacher's Fish & Chips, Inc. Motion for the Entry of a Default Judgment on its Complaint Against William Condren on the Issue of Liability is DENIED.

Defendant William J. Condren's Motion in Opposition to Plaintiff's Motion for a Judgment by Default is GRANTED.

The above two rulings pertaining to defendant Condren are conditioned upon the payment by defendant Condren of the costs and attorney's fees incurred by plaintiff in the presentation of these motions.

Motion for the Entry of a Default Judgment on the Amended Counterclaim of Arthur Treacher's Fish & Chips, Inc. Against Plaintiff Worcester Quality Foods, Inc. is DENIED.

Motion of Worcester Quality Foods, Inc. to Set Aside Entry of Default is GRANTED.

Defendant William J. Condren's Motion to Dismiss the Complaint for Lack of Personal Jurisdiction is DENIED.

Defendants' Treacher's of Middlesex, Inc., TRI–MID, Inc., and Louis J. Miazga Motion to Dismiss is DENIED in part and GRANTED in part as follows:

Defendant Miazga's Motion to Dismiss Count II of the Complaint pursuant to Rule 12(b)(6) is GRANTED.

In all other respects, defendants' Motion is DENIED.

Motion of Plaintiff Arthur Treacher's Fish & Chips, Inc. for Certification of a Defendant Class Action is under advisement pending an appropriate supplementation of the record in accordance with Part VIII of the foregoing Memorandum.

All motions raising issues of venue are under advisement in accordance with Part IX of the foregoing Memorandum.

No later than Monday, October 19, 1981 at 10:00 a. m., liaison counsel shall submit to the Court a proposed agenda for the October 20th conference in accordance with Part XI of the foregoing Memorandum.

IT IS SO ORDERED.